Ruffin, C. J.
 

 The transactions, out of which this case arose, are so palpably dishonest on the part of Brown, that counsel has not attempted to defend them in any of their parts. Nor, indeed, has fault been found with any of the views taken of the case by the court, excepting only the observation, “ So, if the money paid for the slaves by the plaintiff was furnished by Brown,” the transaction would be fraudulent, and the plaintiff could acquire no title under it It is said, that suggestion was made and submitted to the jury without evidence, and, therefore, erroneously. If it be so, the verdict must be set aside; for, however much we might regret sending a case back to another trial, in which, upon the plaintiff’s own evidence, the result must always be' against him, yet we should be obliged to 'do so, if he did not
 
 *400
 
 have
 
 the
 
 full benefit of the law upon the
 
 former trial. Bat
 
 *n suc^ a case as l^e Presenti certainly the court cannot be expected to require less than the entire and absolute want of evidence, direct or inferential, upon which the jury could have acted. We do not think there was such a total destitution of proof on that point; but that it was furnished by the other fraudulent circumstances of the case, tending to establish a-secret trust'between those parties for Brown. Among these circumstances are the following: Allen, the deputy marshal, was the nephew of Brown, and in his employment in his tan-yard, in which the negroes in controversy were also employed under him. All that property, tan-yard, stock, and slaves, was, among other things, advertised to be sold ou the 1st of April, in Newbern, by Allen, under the execution; but, before that day of sale, by the procurement of Brown, the sale of these negroes was advertised in Washington by Demilt, another deputy marshal, to take place there on the 6th of April. Accordingly, at the New-bern sale on the 1st of April, these negroes were allowed to be out of the way, and were not sold; but the tan-yard, stock of leather, hides &c. and two other negroes were sold, and purchased by the present plaintiff. But Brown still continr ued in possession of every thing thus purchased, and worked out and sold the leather, and, as far as we see, enjoyed all the profits. Then, on the night of the 4th of April, he, Brown, set out secretly with the execution aud the negroes to Washington, and had them in Washington for sale on the morning of the 6th of the mouth, and they were then sold by Demilt, and, as Brown says, were, without the privity of the plaintiff, also purchased, by his procurement, in the name of Blackledge. No money was then paid on account of the purchase. But it is certain, and the contrary is not pretended, that Brown supplied the money to defray the expenses of the trip to and from Washington, and that he also took the execution again and the negroes back to their old employment 1 in the tan-yard, which was still in his own occupation and enjoyment; and there they remained until they were seized a second time by the present defendant, for the purpose of making the sale which gave rise to this action. The ne-
 
 *401
 
 groes, which Brown values at about $4,000, were bid off at Washington for $210: and that sum was paid into the clerk’s office on the 12th of May following by a respectable gentleman in the name of the plaintiff; and it must be admitted that there is no direct evidence that it was not the money of the plaintiff — but was furnished by Brown. But when we find that Brown furnished other money, that, namely, for the expenses as just mentioned — that, in making the purchase, he used the plaintiff’s name, at his will, ánd withoirf the leave of the plaintiff — and that the purchase was made for his, Brown’s, benefit, collected from the attending circumstances, and to be inferred from his subsequent possession and enjoyment of all the property thus put into the plaintiff’s name— that he, Brown, made the remittance to Demilt,- which was intended to complete the fraudulent purchase, and did all the correspondence towards closing the transaction, as he had begun it; there is, at least, some, if not a strong ground of suspicion, that the plaintiff, throughout, furnished nothing but his name to his brother-in-law, Brown, and that the latter, as he gave his personal agency, so also supplied out of his funds, or, possibly, out of the tan-yard, which was still in his disposition, the pecuniary means that were used to carry out the dishonest purposes of this unfortunate man. We do not say, that a jury would be obliged to infer, from these circumstances, that Brown furnished the money; but, on the contrary, we think they might well have refused so to find. But we do not think the circumstances enumerated so irrela-tive or so inconclusive to establish the fact, that the money was- probably,
 
 per indirectum,
 
 furnished by Brown, instead of being thrown away by the plaintiff for the other’s benefit, as to give to a verdict, finding that fact, the characteristic of being a finding without evidence. Those circumstances certainly tend towards that conclusion: they raise some suspicion or presumption of the supposed fact. And it was not, therefore, erroneous to leave them to the jury, to be weighed by them, and allowed such force as they thought them entitled to, from their knowledge of business and the usual motives of men in the relation and condition in which the plaintiff and Brown stood,
 

 Per Curiam, Judgment affirmed,